# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

|  |  |
|---|---|
| CONSUMER DATA INDUSTRY ASSOCIATION,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW J. PLATKIN, Acting Attorney General of New Jersey,<br><br>    Defendant. | Hon. Zahid N. Quraishi, U.S.D.J.<br>Hon. Tonianne J. Bongiovanni, U.S.M.J.<br><br>Civil Action No. 3:19-cv-19054-ZNQ-TJB<br><br>**<u>CIVIL ACTION</u>**<br><br>Motion Return Date: May 16**,** 2022 |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(c)

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL
OF NEW JERSEY
124 Halsey Street, Fifth Floor
Post Office Box 45029
Newark, New Jersey 07101
*Attorney for Defendant*

Olga E. Bradford (006731986)
*Deputy Attorney General*
  On the Brief

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ............................................................................................3

    I.    THE NJFCRA IS NOT PREEMPTED BY FEDERAL LAW. .................3

        A. Express Preemption Does Not Apply. ....................................3

        B. Conflict Preemption Does Not Apply. ...................................7

    II.    THE NJFCRA DOES NOT VIOLATE THE FIRST AMENDMENT. ..10

CONCLUSION ........................................................................................15

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Arizona v. United States*, 567 U.S. 387 (2012) ................................................... 7

*Central Hudson Gas and Electric Corp. v. Public Serv. Commission*, 447 U.S. 557 (1980) ........................................................................................ 10, 12, 13, 14

*Consumer Data Industry Assoc. v. Frey*, 26 F.4th 1 (1st Cir. 2022) ................ 3, 4, 5

*Fellner v. Tri-Union Seafoods, LLC*, 539 F.3d 237 (3d Cir. 2008) ........................ 10

*Gade v. Nat'l Solid Waste Mgmt. Ass'n*, 505 U.S. 88 (1992) ................................. 7

*Greater New Orleans Broad. Assoc. v. United States*, 527 U.S. 173 (1999) .......... 12

*Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116 (3d Cir. 2020) ..................................................................................................... 13

*Renton v. Playtime Theatres*, 475 U.S. 41 (1986) ................................................ 11

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ................................................. 13

*Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002) .............................................. 10

### **Statutes**

15 U.S.C. § 1681a(g) ............................................................................................ 8

15 U.S.C. § 1681c .................................................................................................. 4

15 U.S.C. § 1681g ............................................................................................... 6, 7

15 U.S.C. § 1681t(a) .............................................................................................. 7

15 U.S.C. § 1681t(b) .............................................................................................. 3

15 U.S.C. § 1681t(b)(1)(E) ..................................................................................... 4

15 U.S.C. § 1681t(b)(5) ................................................................................. 3, 4, 5, 6

15 U.S.C. §§ 1681c-1 .................................................................................... 2, 3, 6

15 U.S.C. §1681j ....................................................................................... 2, 3, 5, 6

N.J. Stat. Ann. § 56:11-34 .......................................................................... 1, 8, 11, 12

### **Other Authorities**

Data USA: New Jersey, https://datausa.io/profile/geo/new-jersey (last visited Mar. 22, 2022) ................................................................................................. 11

Languages in New Jersey, STATISTICAL ATLAS, https://bit.ly/3rE29nL (last visited Mar. 22, 2022) ......................................................................................... 12

Press Release, N.J. Assembly Democrats, Credit Reports Will Be Available In Spanish And Other Languages Under New Law Sponsored By Lopez, Holley And Schaer (July 19, 2019), https://bit.ly/33QiY6S ..........................................11

*The Merriam-Webster Dictionary, Interpret & Translation*, https://www.merriam-webster.com/dictionary (last visited Mar. 22, 2022) .............................................9

## Regulations

FTC, *Free Annual File Disclosures; Final Rule*, 69 Fed. Reg. 35,468, 35,476 (June 24, 2004) .........................................................................................................9

## PRELIMINARY STATEMENT

This case concerns whether the federal Fair Credit Reporting Act (FCRA) preempts a 2019 amendment to the New Jersey Fair Credit Reporting Act (NJFCRA), which requires nationwide consumer reporting agencies (CRAs), upon request of a consumer, to provide the consumer with a translation of the consumer's individual credit report. Specifically, N.J. Stat. Ann. § 56:11-34 directs the Director of the Division of Consumer Affairs (Director) to issue regulations requiring CRAs to make the very same quantum of information required by the FCRA to be disclosed available—at a consumer's request—in English, Spanish and at least ten other languages that the Director determines are the first language of a significant number of New Jersey consumers. That information is currently provided by CRAs in English only. As explained in Defendant's moving brief, the NJFCRA does not conflict or interfere with any obligation of CRAs under the FCRA, nor is the state law inconsistent with any provision of the FCRA.

Nothing in Plaintiff Consumer Data Industry Association's (Plaintiff or CDIA) initial brief leads to a different conclusion. Plaintiff's primary theory, that the NJFCRA improperly regulates the content, preparation, and method of delivery of file disclosures, rests on an overly broad reading of the FCRA's express preemption provision that was roundly rejected by the First Circuit. Instead, because

the NJFCRA does not impose any requirement with respect to the specific conduct required by 15 U.S.C. §§ 1681c-1 or 1681j(a), this preemption theory fails.

Plaintiff gets no further with its theory that the NJFCRA is preempted as inconsistent with the FCRA. The NJFCRA requires CRAs to issue a translation of the information in a consumer's file into the language that consumer understands, and thus the content of the disclosure is the same regardless of the language in which it is delivered. Nothing in the FCRA is to the contrary, as the statute does not specify that file disclosures be made in English, but instead states that CRAs need not produce the information in the exact form in which it is stored as long as all of the consumer's information is clearly and accurately disclosed. Indeed, the discrete conduct required by the NJFCRA is fully consistent with the FCRA's terms and objectives. Because nothing precludes CRAs from complying with both the FCRA and NJFCRA, Plaintiff's purported conflict is illusory, and this preemption theory fails as a matter of law.

Finally, Plaintiff's First Amendment compelled speech challenge must be rejected. The NJFCRA advances the State's important interest in protecting consumers and breaking language barriers for a significant portion of its residents, thus ensuring their meaningful participation in the financial world. And the NJFCRA

is narrowly tailored to those interests, as it requires translation only upon request, and only for those languages spoken by a significant number of New Jerseyans.

## **ARGUMENT**

## I.     **THE NJFCRA IS NOT PREEMPTED BY FEDERAL LAW.**

### A.     **Express Preemption Does Not Apply.**

Plaintiff contends that the NJFCRA is preempted by 15 U.S.C. § 1681t(b)(5) because it regulates specific conduct already regulated by the FCRA, but Plaintiff misunderstands this provision of federal law. The FCRA establishes a general rule that a state law is *not* preempted unless it is inconsistent with the FCRA or is expressly preempted by one of the specific provisions of 15 U.S.C. § 1681t(b). That section provides that "[n]o requirement or prohibition may be imposed" by state law "with respect to the conduct required by the specific provisions of" FCRA enumerated in 15 U.S.C. § 1681t(b)(5). *Id.* Plaintiff contends that the NJFCRA regulates the specific conduct required by 15 U.S.C. §§ 1681c-1 and 1681j(a), broadly claiming that these provisions preempt any state law that in any way relates to "what" CRAs must provide to consumers in a free annual disclosure or "how" CRAs provide the disclosure. Pl.'s Br. 27 (ECF No. 42-4).

Tellingly, the First Circuit recently rejected Plaintiff's overly broad reading of similar language in *Consumer Data Industry Assoc. v. Frey*, 26 F.4th 1 (1st Cir. 2022). In *Frey*, the panel considered whether a Maine law restricting the reporting of certain medical debt was preempted by 15 U.S.C. § 1681t(b)(1)(E). That provision, like 15 U.S.C. § 1681t(b)(5), preempts state laws that impose a requirement or prohibition "*with respect to* any subject matter regulated under … [15 U.S.C. § 1681c], relating to information contained in consumer reports." 15 U.S.C. § 1681t(b)(1)(E) (emphasis added).

The First Circuit rejected CDIA's argument that this provision "preempts all state laws 'relating to information contained in consumer reports,' regardless of whether they regulate subject matter regulated by Section 1681c." 26 F.4th at 11. The court reasoned that the structure of Section 1681t(b)(1)(E) reflects Congress's intent "to give the statutory references a functional role in describing the regulated 'subject matter,'" so that the phrase "with respect to" must "narrow[] the scope of preempted subject matter to its referent or referents." *Id.* at 6-7. "CDIA's proposed interpretation—which treats the phrase 'subject matter' as defined only by

4

the phrase 'relating to'—renders the entire phrase, 'regulated under section 1681c' surplusage." *Id.* at 7. In short, the First Circuit construed "with respect to" in Section 1681t(b)(1)(E) to "narrowly preempt[] state laws that impose requirements or prohibitions with respect to *the specific subject matters* regulated under Section 1681c" . *Id.* at 14 (emphasis added).

*Frey* thus forecloses Plaintiff's expansive reading of the similar language in Section 1681t(b)(5), under which preemption broadly applies to any state law imposing requirements that merely "relat[e] to" "what" information must be contained in the file disclosure or to "how" and "when" the disclosure must be provided to consumers. *See* Pl.'s Br. 27. Instead, following *Frey*, the similar phrase "with respect to the conduct required by the specific provisions of …" in Section 1681t(b)(5) narrowly preempts only state laws that impose regulations concerning the *specific conduct* required by Sections 1681c-1 or 1681j(a), the two provisions Plaintiff identifies.

As such, Plaintiff has no viable preemption claim under Section 1681t(b)(5), because the NJFCRA's translation requirement is discrete from the specific conduct required by both Sections 1681c-1 or 1681j(a). Starting with Section 1681j(a), Plaintiff highlights subsections (a)(1)(A) and (a)(2), which require CRAs to provide the requisite free file disclosure once annually at the consumer's request and to

5

provide such disclosure within fifteen days of receipt of the request, respectively. Pl.'s Br. 20, 26. The NJFCRA does not bear on any of that; it imposes no requirement with respect to either the specific duty to provide the disclosure free of charge or the number of days a CRA has to fulfil a request, nor does it shorten or enlarge the 12-month interval at which such requests are permitted. Plaintiff does not even argue otherwise, and instead contends the FCRA "established 'uniform federal standards' regarding the preparation and delivery of file disclosures" with which states may not interfere. Pl.'s Br. 27. But *Frey* already rejected this argument, *see* 26 F.4th at 9, noting it cannot be squared with the narrow preemption expressed by the plain text. As the First Circuit explained, "if Congress intended to impose that degree of uniformity, it could have accomplished this objective by prohibiting all state regulation of content of consumer reports. But Congress did not write the statute that way." *Id.* (internal quotation marks omitted).[1]

Nor does the NJFCRA impose requirements with respect to the specific conduct required by Section 1681c-1. Plaintiff references Section 1681c-1(a)(2), which states that when a CRA places a fraud alert on a consumer's file, it must advise the consumer that she "may request a free copy of the file of the consumer pursuant

---

[1] Plaintiff also cites Section 1681j(a)(1)(B), but this provision is even farther afield; it requires *consumers* to submit requests for the free report "using the centralized source established for such purpose in accordance with" the FCRA, whereas nothing in the NJFCRA regulates this specific conduct required of consumers.

to [15 U.S.C. §1681j(d)]" and provide the consumer the free file disclosure under Section 1681g within three days of a request to place a fraud alert on their file. *See* Pl.'s Br. 20, 26. Again, nothing in the NJFCRA imposes requirements with respect to the specific duty to advise fraud victims of their right to a free annual report, the amount a CRA can charge to fulfil such requests by fraud victims, or the time period in which a CRA must provide the file disclosure in this specific scenario. The NJFCRA's language-access provision is distinct from the discrete acts required of CRAs by 15 U.S.C. §§ 1681c-1 and 1681j(a), and thus does not come within the narrow terms of Section 1681t(b)(5)'s preemption provision.

### B.    Conflict Preemption Does Not Apply.

Plaintiff additionally argues that the NJFCRA is preempted under 15 U.S.C. § 1681t(a) based on a purported conflict with 15 U.S.C. § 1681g(a). Pl.'s Br. 16. Conflict preemption arises when it is impossible for regulated parties to comply with both the federal and state laws, or when a state law poses an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat'l Solid Waste Mgmt. Ass'n,* 505 U.S. 88, 98 (1992); *see also Arizona v. United States*, 567 U.S. 387, 399 (2012). Plaintiff argues that it is "impossible" for CRAs to comply with both the FCRA's requirement that CRAs disclose to the consumer "[a]ll information in the consumer's file at the time of the request" and the

NJFCRA's translation requirement. Pl.'s Br. 17. But no such conflict exists, as Plaintiff misunderstands its members' obligations under the FCRA and NJFCRA.

Plaintiff's theory rests on two misconceptions: one, that the FCRA requires CRAs to produce the information in a consumer's file exactly as it appears in the CRA's system, *i.e.*, in plain English; and two, that translating information from one language to another fundamentally alters the information itself. As to the former, nothing in the FCRA expressly requires CRAs to store the information in a consumer's file in English, or to produce the information exactly as it appears in the file with no curation. Plaintiff cites 15 U.S.C. § 1681g(a)(1), but this only requires CRAs to disclose "[a]ll information in the consumer's file at the time of the request" without specifying that the disclosure be made in a particular language. Further, Plaintiff's reading runs up against the FCRA's definition of "file," which states that "when used in connection with information on any consumer, ["file"] means all of the information on that consumer recorded and retained by a consumer reporting agency *regardless of how the information is stored*." 15 U.S.C. § 1681a(g) (emphasis added). In other words, the FCRA itself recognizes that the information in the disclosure need not appear in exactly the same form as "the information is stored" by the CRA, so long as "all information" in that consumer's file is disclosed. This text and context foreclose Plaintiff's view that "information that is stored in English" is legally required to be disclosed only in English. Pl.'s Br. 18. Simply, the FCRA

imposes no requirement that consumer files be maintained or disclosed in English, regardless of whether that is the regular practice of Plaintiff's members.

Plaintiff's second premise—that translating consumer credit information inherently alters the information itself—is equally flawed. As a matter of common sense, translating a text from one language into another does not change the information itself; it only means conveying the same information to the recipient  in a language that person understands. The NJFCRA operates in just this way; it requires the "information subject to disclosure pursuant to" N.J. Stat. Ann. § 56:11-34 to be translated into another language, so that the consumer receives the same content regardless of what language it is delivered in. Nor does this entail "interpretation" of the file contents, as Plaintiff erroneously claims. Pl.'s Br. 18. Dictionaries define "translation" as "a rendering from one language into another," while the word "interpret" is defined as "to explain or tell the meaning of." *The Merriam-Webster Dictionary, Interpret & Translation*, https://www.merriam-webster.com/dictionary (last visited Mar. 22, 2022). Nothing in the NJFCRA requires CRAs to "interpret" or explain the meaning of the information in the consumer's file—it simply entails rendering the information into the language that allows that consumer to understand the file's contents. As such, CRAs plainly can comply with both the FCRA's and NJFCRA's requirements.

That the Federal Trade Commission (FTC) previously declined to construe the FCRA to require translation of file disclosures does not help Plaintiff. *See* Pl.'s Br. 19. The FTC simply declined to affirmatively impose this obligation on CRAs "at this time" in 2004 "at a time when they will already be responding to the multiple and varied new obligations that the FACT Act imposes." FTC, *Free Annual File Disclosures; Final Rule*, 69 Fed. Reg. 35,468, 35,476 (June 24, 2004). The FTC decided against such a requirement as a policy matter, not because such a requirement would be inconsistent with the statute. If anything, the FTC's explanation of its decision supports Defendant's position that New Jersey's law is not in conflict with federal law. In any event, the FTC's policy-driven conclusion cannot overcome the flaws in Plaintiff's preemption theory. *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 65 (2002) (finding "[i]t is quite wrong to view [the Coast Guard's decision not to adopt a regulation] as the functional equivalent of a regulation prohibiting all States and their political subdivisions from adopting such a regulation"); *Fellner v. Tri-Union Seafoods, LLC*, 539 F.3d 237, 246-47 (3d Cir. 2008) (same).

## II.   <u>THE NJFCRA DOES NOT VIOLATE THE FIRST AMENDMENT.</u>

Lastly, Plaintiff fares no better with its claim that the NJFCRA impermissibly compels speech in violation of the First Amendment. As Defendant's moving brief

explains, the NJFCRA is properly tailored to the State's substantial interest in ensuring that the benefits of consumer protection laws reach all New Jerseyans, including those for whom English is not a primary language. *See* Def.'s Br. 25-27. Plaintiff's responses fail as a matter of law, as Plaintiff simply misunderstands the NJFCRA's purposes and the governing level of scrutiny.

Plaintiff's challenge focuses on the third and fourth prongs of the test for reviewing regulations of commercial speech announced in *Central Hudson Gas and Electric Corp. v. Public Serv. Commission*, 447 U.S. 557 (1980), conceding the first two prongs of this test are met. *See* Pls.' Br. 28-31. As to the third prong, Plaintiff argues that because the NJFCRA does not explicitly state the "legal or factual basis" for imposing this requirement on CRAs, it cannot advance any substantial interest. *Id.* at 30-31. That is incorrect. The governmental interest is evident from the plain language of N.J. Stat. Ann. § 56:11-34 itself, which clearly announces the State's important interest in consumer protection by requiring "clear[] and accurate[]" disclosure of the requisite credit information to consumers as well as the language translation for certain consumers whose first language is one other than English.

The record compiled by Defendant here further substantiates that interest. *See* Def.'s Br. 26-27. Notably, the NJFCRA's sponsors explained that this legislation was intended to provide additional consumer protection and to remove barriers to New Jersey citizens that have limited English proficiency. *See* Press Release, N.J.

11

Assembly Democrats, *Credit Reports Will Be Available In Spanish And Other Languages Under New Law Sponsored By Lopez, Holley And Schaer* (July 19, 2019), https://bit.ly/33QiY6S. The need for this additional protection is evidenced by U.S. Census Bureau data, which show that 32.2% of New Jersey citizens are speakers of a non-English language (compared to the national average of 22%), and 19.6% of the state's population are considered limited English proficient. *See* Data USA: New Jersey, https://datausa.io/profile/geo/new-jersey (last visited Mar. 22, 2022). The Legislature was not required to explicitly lay out the totality of this evidence in the statute itself, as Plaintiff erroneously claims (at 30-31). *See Renton v. Playtime Theatres*, 475 U.S. 41, 51-52 (1986) (the First Amendment asks instead whether whatever evidence the State ultimately relies upon is "reasonably believed to be relevant to the problem" the challenged law seeks to address). This record amply demonstrates that New Jersey's concerns are real and the NJFCRA will in fact "alleviate them to a material degree." *Greater New Orleans Broad. Assoc. v. United States*, 527 U.S. 173, 188 (1999).

The NJFCRA is also undoubtedly well tailored to this important state interest, satisfying the fourth *Central Hudson* prong. *See* 447 U.S. at 566. Plaintiff's objection that the NJFCRA does not specifically require assessment of whether a consumer "can speak or read English well," Pl.'s Br. 31, ignores that the law expressly only requires file disclosures to be translated "upon the consumer's request." N.J. Stat

Ann. § 56:11-34. Since only a consumer with limited English proficiency would have a need for the translation, it would make no sense to impose an additional regulatory burden just to confirm this obvious fact. The NJFCRA is also sensibly limited in scope to the non-English languages "most frequently spoken" by New Jersey consumers. *Id.* While Plaintiff questions the legislative choice to include the eleven most common languages, Pl.'s Br. 31, that overlooks that demographic information identifies *at least twenty* different languages spoken by New Jerseyans. *See* Languages in New Jersey, STATISTICAL ATLAS, https://bit.ly/3rE29nL (last visited Mar. 22, 2022). The NJFCRA struck a reasonable balance by covering only the ten most spoken languages after English and Spanish, whose speakers comprise in the aggregate about 62.1% of the State's population. *See* Def.'s Br. 30.

Because the NJFCRA plainly satisfies the *Central Hudson* test, Plaintiff falls back on an argument that the Court should instead apply "heightened scrutiny" on the basis that the NJFCRA is a content- and speaker-based restriction on speech. Pl.'s Br. 28-29 (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011)). But Plaintiff's premise is wrong; the statute does not target any particular speaker or viewpoint but rather applies to *all* CRAs, because they are the only entities that collect and provide consumer credit information to consumers. *See Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 139 (3d Cir. 2020) (ordinance prohibiting inquiry into job applicant's wage history did not implicate speaker

13

discrimination where it "precludes *all* employers from inquiring into wage history, without focusing on any particular viewpoint or favoring any particular employer"). The NJFCRA is a consumer protection measure, not a content-based regulation, because it ensures that the content of every CRA's disclosure is equally intelligible to the consumer no matter whether English is his or her primary language. *Sorrell* is thus of no help to Plaintiff, as the Vermont law restricted the use of prescriber-identifying information only for "disfavored speakers," *i.e.*, pharmaceutical manufacturers. 564 U.S. at 564.[2]

---

[2] Moreover, Plaintiff draws the wrong conclusion from *Sorrell*, as the Supreme Court applied "heightened scrutiny," which it defined as requiring a showing "at least that the statute directly advances a substantial government interest and that the measure is drawn to achieve that interest," 564 U.S. at 572—a less exacting test than strict scrutiny. *See, e.g.*, *Greater Phila. Chamber of Commerce*, 949 F.3d at 140 (noting difficulty in distinguishing *Sorrell*'s "heightened scrutiny" from the *Central Hudson* test).

14

## <u>CONCLUSION</u>

This should grant Defendant's motion, deny Plaintiff's cross-motion, and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL OF
NEW JERSEY

By:   /s/ Olga E. Bradford
Olga E. Bradford (006731986)
Deputy Attorney General

Dated:  March 24, 2022

15